UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GAO QI,<br><br>        Plaintiff,<br><br>  -against-<br><br>UNITED STATES CITIZENSHIP &<br>IMMIGRATION SERVICES et al.,<br><br>        Defendants. | Case No. 1:23-cv-08843 (JLR)<br><br>**<u>OPINION AND ORDER</u>** |

JENNIFER L. ROCHON, United States District Judge:

  Gao Qi ("Plaintiff") filed an asylum application with United States Citizenship and Immigration Services ("USCIS") in 2020. ECF No. 1 ("Compl.") at 5. Several years have passed, yet Plaintiff has "not receive[d] an appointment for [an] asylum interview." *Id.* Seeking to expedite matters, Plaintiff has sued USCIS, USCIS's Office of the General Counsel (the "General Counsel"), and the United States Attorney for the Eastern District of New York (the "U.S. Attorney" and, together with USCIS and the General Counsel, the "Government"). *See generally id.*

  The Government has moved to dismiss. ECF No. 18 ("Br."). For the following reasons, the Court grants the Government's motion.

BACKGROUND

  Plaintiff is a citizen of China. ECF No. 17 ("Heinrich Decl.") ¶ 8. According to the Government, Plaintiff "illegally entered the United States on November 30, 2019." *Id.* ¶ 9. Plaintiff does not confirm or deny this assertion, although he admits that he "entered the USA without inspection." ECF No. 23 ("Opp.") at 1; *see In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020) (per curiam) ("A judicial admission is a statement made by a party or its counsel which has the effect of withdrawing a fact from contention and which binds the

1

party making it throughout the course of the proceeding."). USCIS received Plaintiff's Form I-589 application for asylum on October 13, 2020. Compl. at 5, 7; Heinrich Decl. ¶ 10; *see Chen v. Garland*, 75 F.4th 109, 112 (2d Cir. 2023) (Form I-589 "asks applicants to provide information about their personal and family backgrounds and details about the harm or mistreatment that they experienced in their home country"). Plaintiff appeared for a fingerprinting appointment on December 4, 2020. Compl. at 5. To date, Plaintiff's asylum application remains pending. *Id.*; Heinrich Decl. ¶ 16.

On May 15, 2023, Plaintiff filed this action (designated both as a complaint and as a petition for a writ of mandamus) in the United States District Court for the Eastern District of New York. Compl. at 1. Plaintiff asserts that there has been "undue delay in [his] I-589 asylum application," in violation of due process. *Id.* at 4-5. Plaintiff requests that USCIS's Asylum Office "issue a Notice of Interview" so that his "asylum application can continue [through the] process." *Id.* at 6 ("[A]fter I have my asylum interview, my asylum case could either [be] approve[d] by US Citizenship and Immigration Services, or refer[red] to Immigration Court. Right now, my case is stuck without [an] asylum interview."). On October 4, 2023, Judge Chen ordered that the case be transferred to this District, ECF No. 8, where it was assigned to the undersigned.

On November 7, 2023, the Government moved to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6). Br. On November 28, 2023, the Court noted that Plaintiff's opposition was past due and ordered Plaintiff to file his opposition by December 22, 2023, or otherwise show cause why the Government's motion to dismiss should not be treated as unopposed. ECF No. 20. "As a final courtesy," on March 25, 2024, the Court "permit[ted] Plaintiff to file a response to [the Government's] motion to dismiss by April 10, 2024." ECF No. 21 (emphasis omitted); *see Rosa v. Doe*, 86 F.4th 1001, 1007 (2d

2

Cir. 2023) (the "special solicitude" afforded to *pro se* litigants "includes leniency in the application of procedural rules"). On April 10, 2024, Plaintiff submitted his opposition. Opp. The Government has not filed a reply brief.

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quotation marks and citation omitted), *aff'd*, 568 U.S. 85 (2013). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (citation omitted). "In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (quotation marks and citation omitted). A court must draw all reasonable inferences in favor of the plaintiff. *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022).

## DISCUSSION

Because Plaintiff is *pro se*, the Court "liberally construe[s]" his pleadings and motion papers and reads them "to raise the strongest arguments they suggest." *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022) (per curiam) (citation omitted). Like the Government, the Court understands Plaintiff to "assert[] claims under the Mandamus Act, 28 U.S.C. § 1361,

the Administrative Procedure Act (the 'APA'), 5 U.S.C. §§ 701-706, and the Due Process Clause of the Fifth Amendment." Br. at 1.

Plaintiff's mandamus and APA claims both implicate 8 U.S.C. § 1158, a provision of the Immigration and Nationality Act (the "INA"). Several parts of Section 1158 are relevant here.

- 8 U.S.C. § 1158(a)(1) states: "Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title."

- 8 U.S.C. § 1158(d)(1) states in relevant part: "The Attorney General shall establish a procedure for the consideration of asylum applications filed under subsection (a)."

- 8 U.S.C. § 1158(d)(5)(A)(ii) states: "The procedures established under paragraph (1) shall provide that . . . in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed."[1]

- 8 U.S.C. § 1158(d)(7), titled "No private right of action," states: "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."

The Court addresses Plaintiff's claims in turn.

**I. Mandamus**

Generously understood, Plaintiff seeks a writ of mandamus to compel the Government to adhere to the 45-day deadline for "commenc[ing]" "the initial interview or hearing on the asylum application." 8 U.S.C. § 1158(d)(5)(A)(ii). The Government moves to dismiss

---

[1] *See also* 8 C.F.R. § 208.9(a)(1) ("The asylum officer shall conduct the interview within 45 days of the applicant being served with a positive credible fear determination made by an asylum officer pursuant to § 208.30(f) or made by an immigration judge pursuant to 8 CFR 1208.30, subject to the need to reschedule an interview due to exigent circumstances, such as [certain examples].").

4

Plaintiff's mandamus claim under Rule 12(b)(1) for lack of subject-matter jurisdiction. *See* Br. at 11-12.

District courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quotation marks and citation omitted). "[J]urisdiction under the mandamus statute is limited to actions seeking to compel the performance of a nondiscretionary duty." *Duamutef v. INS*, 386 F.3d 172, 180 (2d Cir. 2004) (emphasis omitted); *accord Rahman v. Jaddou*, No. 22-101, 2022 WL 6593589, at *2 (2d Cir. Oct. 11, 2022) (summary order). "Before a writ of mandamus may issue, a party must establish that (1) no other adequate means exist to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam) (brackets, quotation marks, and citation omitted).

As explained in greater detail below, the Court agrees with the Government that Plaintiff's mandamus claim should be dismissed because Plaintiff has failed to establish a clear and indisputable right to issuance of the writ. The Court disagrees, however, with the Government's request to dismiss under Rule 12(b)(1).

Courts in this Circuit have differed as to "whether a failure to satisfy the elements of a mandamus claim under § 1361 warrants dismissal for lack of jurisdiction or for failure to state a claim." *City of New York v. U.S. Postal Serv.*, 519 F. Supp. 3d 111, 127 n.9 (E.D.N.Y. 2021); *accord Ngai v. Mayorkas*, No. 22-cv-05358 (LDH), 2024 WL 1346530, at *1 n.2 (E.D.N.Y. Mar. 29, 2024) ("The question of whether [meeting] the three requirements for a

5

writ of mandamus is a jurisdictional or merits inquiry remains an open question in this circuit."). The split on the issue has included immigration cases like this one. *Compare, e.g.*, *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 57 (S.D.N.Y. 2020) (dismissing for lack of jurisdiction), *Baisheng Chen v. Wolf*, No. 19-cv-09951 (AJN), 2020 WL 6825681, at *3 (S.D.N.Y. Nov. 20, 2020) (same), *and Ying Yu Liu v. Wolf*, No. 19-cv-00410 (PGG), 2020 WL 2836426, at *10 (S.D.N.Y. May 30, 2020) (same), *with Weihua Zheng v. Garland*, No. 22-cv-06039 (AMD), 2024 WL 333090, at *4 (E.D.N.Y. Jan. 29, 2024) (dismissing for failure to state a claim), *Yueliang Zhang v. Wolf*, No. 19-cv-05370 (DLI), 2020 WL 5878255, at *3-4 (E.D.N.Y. Sept. 30, 2020) (same), *and De Oliveira v. Barr*, No. 19-cv-01508 (EV), 2020 WL 1941231, at *2-4 (E.D.N.Y. Apr. 22, 2020) (same). The Court concludes that the correct approach here is to treat the failure to satisfy the elements of Plaintiff's mandamus claim as a merits issue addressed under Rule 12(b)(6), rather than as a jurisdictional issue addressed under Rule 12(b)(1).

Section 1361's grant of "original jurisdiction of any action in the nature of mandamus" hinges on whether the suit seeks "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361 – in other words, whether the plaintiff is "seeking to compel the performance of a nondiscretionary duty," *Duamutef*, 386 F.3d at 180 (emphasis omitted). Here, unlike in *Duamutef* (where no nondiscretionary duty had yet been triggered), Plaintiff identifies an applicable nondiscretionary duty that was triggered by the filing of his asylum application: "the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(ii); *cf. Duamutef*, 386 F.3d at 180 ("Until Duamutef is released by the state, and the 90-day removal period specified in § 1231(a)(1)(A) is triggered, the pace at which the Attorney General proceeds to take

Duamutef into custody and execute the removal order is within his discretion and thus beyond mandamus or habeas review."). "[T]he word 'shall' usually connotes a requirement" and "typically creates an obligation impervious to discretion." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) (ellipsis, further quotation marks, and citations omitted). The imposition of a 45-day time limit further indicates that the duty imposed by Paragraph (5) of Subsection (d), 8 U.S.C. § 1158(d)(5), is nondiscretionary. *See, e.g.*, *New Jersey v. Wheeler*, 475 F. Supp. 3d 308, 320-21, 325 (S.D.N.Y. 2020) (plaintiffs brought citizen suit under the Clean Air Act alleging that the Environmental Protection Agency failed to perform a nondiscretionary duty; noting that "[e]xpress deadlines in the CAA typically create nondiscretionary duties to act," the court held that it had "jurisdiction over the plaintiffs' claim that the EPA ha[d] failed to perform a nondiscretionary duty under the Act by virtue of the existence of a clear statutory deadline for the EPA to promulgate [certain regulations]" (citation omitted)); *Cronin v. Browner*, 898 F. Supp. 1052, 1059 (S.D.N.Y. 1995) (an agency has a "non-discretionary or mandatory duty" to act when the "agency bears a duty to act by a date certain"); *cf. Iqbal v. Sec'y U.S. DHS*, 190 F. Supp. 3d 322, 331 (W.D.N.Y. 2016) (denying citizenship applicant's request for mandamus because, among other reasons, "there is no statute or regulation creating a nondiscretionary duty as to the time in which USCIS must issue a final decision after there has been an administrative appeal hearing – the 180-day time limit only pertains to the time during which USCIS must schedule a hearing").

Nor does Paragraph (7) of Subsection (d), 8 U.S.C. § 1158(d)(7), deprive the Court of subject-matter jurisdiction over Plaintiff's claim. *Accord Yueliang Zhang*, 2020 WL 5878255, at *3 (collecting cases). That provision states that "[n]othing in [Subsection (d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by

7

any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7). This disavowal of a private right of action does not render the duty imposed by Paragraph (5) discretionary. Notably, "other sections of the INA do contain jurisdiction stripping provisions, demonstrating that Congress chose not to include such a provision in § 1158(d)(7)." *Yueliang Zhang*, 2020 WL 5878255, at *3 (citing examples); *accord Yubing Luo v. USCIS*, No. 23-cv-01104 (HG), 2023 WL 5672041, at *3 (E.D.N.Y. Sept. 1, 2023). In short, so long as Plaintiff's mandamus action is one that "seek[s] to compel the performance of a nondiscretionary duty," the Court has jurisdiction to hear it, even if the Court ultimately concludes that Plaintiff is not entitled to mandamus relief. *Duamutef*, 386 F.3d at 180 (emphasis omitted); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." (citation omitted)).

Notwithstanding the foregoing, Plaintiff nonetheless fails to state a claim for mandamus relief. As noted, Paragraph (7) of Subsection (d) states that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7). In other words, Paragraph (5)'s 45-day deadline is not legally enforceable by Plaintiff against USCIS, the General Counsel, or the U.S. Attorney. Thus, Plaintiff has no "clear and indisputable" right to a 45-day adjudication of his asylum application that may be enforced against the Government through a writ of mandamus. *Hollingsworth*, 558 U.S. at 190 (citation omitted). This interpretation of Paragraph (5) comports with decisions by courts in this Circuit and elsewhere. *See, e.g.*, *Weihua Zheng*, 2024 WL 333090, at *4 ("[B]ecause Section 1158(d) does not create a legally enforceable

8

right or benefit, mandamus relief is unavailable."); *Baisheng Chen*, 2020 WL 6825681, at *3 ("[W]here, as here, the statute itself specifically provides that the timing provisions do not 'create any substantive or procedural right or benefit,' Plaintiff cannot make a showing that he has a right – let alone a clear right – to the requested relief." (quoting 8 U.S.C. § 1158(d)(7))); *Yueliang Zhang*, 2020 WL 5878255, at *1, *4 (rejecting request for a writ of mandamus ordering defendant to process asylum application; "it is beyond serious dispute that mandamus pursuant to § 1361 is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action" (brackets and citation omitted)); *Zhihua Yan v. Arlington Asylum Off. USCIS*, No. 23-cv-00617, 2023 WL 7211115, at *1-2 (W.D.N.C. Oct. 6, 2023) (rejecting request for a writ of mandamus "ordering Defendant to conduct Plaintiff's asylum interview" because "the INA does not provide Plaintiff with any right in mandamus enforceable by this Court").

In sum, while the Court has jurisdiction over Plaintiff's claim for mandamus relief, Plaintiff fails to establish that his "right to issuance of the writ is clear and indisputable." *Hollingsworth*, 558 U.S. at 190 (quotation marks and citation omitted). Therefore, the Court dismisses Plaintiff's mandamus claim under Rule 12(b)(6).[2]

---

[2] *H.M.G. v. Johnson*, 599 F. App'x 396 (2d Cir. 2015) (summary order), *aff'g* No. 14-cv-06130 (ALC), 2014 WL 11370122 (S.D.N.Y. Aug. 15, 2014), involving a mandamus request in an international custody dispute, does not compel a different result. In that case, the district court dismissed a mandamus claim for lack of subject-matter jurisdiction because there was "no law entitling [the petitioners] to relief" or "plainly defined and peremptory duty" to prevent the children from leaving the country, and the parent had not even submitted the requisite visa application; therefore, the "[p]etitioners ha[d] failed to show a 'clear and indisputable right' to the relief they request[ed]." *H.M.G.*, 2014 WL 11370122, at *2. That is in stark contrast to the present asylum case, where 8 U.S.C. § 1158(d)(5)(A)(ii) imposes a clear nondiscretionary duty to provide a hearing within 45 days that has been triggered by Plaintiff's application. Therefore, the Court has jurisdiction to hear Plaintiff's mandamus claim, even if the claim is ultimately unsuccessful on the merits. *See also City of New York*, 519 F. Supp. 3d at 127 n.9 (declining to follow *H.M.G.* in dismissing mandamus claim for failure to state a claim rather than on jurisdictional grounds); 14 Charles Alan

II.  APA

The Court turns next to Plaintiff's claim of unreasonable delay, which the Court liberally construes as brought under the APA.  *See* 5 U.S.C. § 706(1) ("The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.").  The Court evaluates this claim under the factors summarized in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"); *see Nat. Res. Def. Council, Inc. v. U.S. FDA*, 710 F.3d 71, 84 (2d Cir. 2013) (*TRAC* "set[s] forth [the] test for determining if agency action is unreasonably delayed"); *Fangfang Xu*, 434 F. Supp. 3d at 52-55 (applying *TRAC* factors in evaluating asylum applicant's APA claim of unreasonable delay); *Baisheng Chen*, 2020 WL 6825681, at *4-6 (same); *accord* Br. at 13 (arguing that the Court should apply the *TRAC* factors).  The *TRAC* factors are:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d at 80 (quotation marks and citations omitted).  "These six factors are not ironclad, but rather are intended to provide useful guidance in assessing claims of agency delay." *Ahmed v. Bitter*, No. 23-cv-00189 (NGG), 2024 WL 22763, at *7 (E.D.N.Y. Jan. 2, 2024)

---

Wright et al., *Federal Practice and Procedure* § 3655 (Westlaw 4th ed. updated Apr. 2023) ("[W]hether jurisdiction exists under Section 1361 is intertwined with the merits because the existence of a legal duty owed to the plaintiff is critical to whether adjudicative power is present." (footnote, quotation marks, and citation omitted)).

10

(quotation marks and citation omitted). Although "no single factor is dispositive," "the first and fourth factors generally carry the most weight." *Arabzada v. Donis*, --- F. Supp. 3d ----, 2024 WL 1175802, at *6 (D.D.C. Mar. 19, 2024).

The Court will consider each factor in turn before assessing them in the aggregate.

### A. *TRAC* Factor 1

"The first *TRAC* factor – whether an agency's time to act is governed by a rule of reason – is the most important." *Kaur v. Mayorkas*, No. 22-cv-04514 (PAE), 2023 WL 4899083, at *6 (S.D.N.Y. Aug. 1, 2023) (quotation marks and citation omitted). "Indeed, only the first *TRAC* factor is phrased as a categorical command: the time agencies take to make decisions *must* be governed by a rule of reason." *Sheiner v. Mayorkas*, No. 21-cv-05272 (ER), 2023 WL 2691580, at *5 (S.D.N.Y. Mar. 29, 2023) (citation omitted). "It inquires whether there is any rhyme or reason for the Government's delay" – "in other words, whether the agency's response time is governed by an identifiable rationale." *Kaur*, 2023 WL 4899083, at *6 (ellipsis, quotation marks, and citation omitted). This factor "turns in large part on the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Id.* (quotation marks and citation omitted).

The Government cites as its rule of a reason "a scheduling system known as 'Last-In-First-Out.'" Br. at 6; *see id.* at 14. Under this system, USCIS "generally schedules recently filed [asylum] cases for interviews ahead of older cases." *Id.* at 6. According to the Government, this approach "puts applicants on notice that filing an asylum application solely to obtain employment authorization carries a risk that the case will be heard quickly," thus "reduc[ing] the incentive engendered by the backlog to file non-meritorious asylum claims as a means to obtain employment authorization." *Id.* Other courts, in this Circuit and elsewhere, have consistently held that the Last-In-First-Out system is a rule of reason for purposes of the

11

first *TRAC* factor. *See, e.g.*, *Doe v. DHS*, No. 23-cv-00002, 2024 WL 1603567, at *3-4 (E.D. La. Apr. 12, 2024); *Arabzada*, 2024 WL 1175802, at *6-7; *Yilmaz v. Jaddou*, --- F. Supp. 3d ----, 2023 WL 7389848, at *4-5 (C.D. Cal. Oct. 4, 2023); *Baisheng Chen*, 2020 WL 6825681, at *5; *Yueliang Zhang*, 2020 WL 5878255, at *4-5; *Ying Yu Liu*, 2020 WL 2836426, at *8; *Fangfang Xu*, 434 F. Supp. 3d at 53. The Court finds their analyses persuasive and agrees with them. Accordingly, the first *TRAC* factor weighs in favor of the Government.

## B. *TRAC* Factor 2

"The second factor considers whether Congress has indicated the time frame for which it expects an agency to act." *Saharia v. USCIS*, No. 21-cv-03688 (NSR), 2022 WL 3141958, at *5 (S.D.N.Y. Aug. 5, 2022). Congress has done so here through Paragraph (5)'s 45-day deadline to commence "the initial interview or hearing on the asylum application." 8 U.S.C. § 1158(d)(5)(A)(ii); *see Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 38 (D.D.C. 2000) ("If a specific deadline for final agency action is provided by Congress, the reasonableness of the delay can be measured in relation to this deadline."). Hence, the second *TRAC* factor points in Plaintiff's favor.

## C. *TRAC* Factors 3 and 5

"Courts analyze *TRAC* factors three and five together, looking to the possible effects a delay has had on a plaintiff's health and welfare and to the nature and extent of the interests prejudiced by delay." *Arabzada*, 2024 WL 1175802, at *8 (quotation marks and citation omitted). As Plaintiff notes in his opposition, his "asylum case had been pending since October 2020 until present time; it has been three and a half years." Opp. at 2. Although Plaintiff asserts that his "livelihood" has suffered, and (understandably) he "would like to have some closure," *id.*, he does not allege that he has been unable to work during the

pendency of his application, *see generally id.*; Compl.³  The Court does not wish to downplay the seriousness of Plaintiff's plight, but the hardships articulated "are not of the severity or kind that other courts have found tilt the third and fifth factors in favor of similarly situated plaintiffs," especially given the conclusory nature of Plaintiff's allegations.  *Punt v. USCIS*, No. 22-cv-01218, 2023 WL 157320, at *5 (D.D.C. Jan. 11, 2023) (collecting cases); *see Rashidian v. Garland*, No. 23-cv-01187, 2024 WL 1076810, at *9 (D.D.C. Mar. 8, 2024) (injuries "which are likely shared by many others facing similar circumstances" are "not so extreme or unusual as to plausibly outweigh the other factors favoring Defendants" (quotation marks and citation omitted)); *cf. Babaei v. U.S. Dep't of State*, --- F. Supp. 3d ----, 2024 WL 1178453, at *8 (D.D.C. Mar. 19, 2024) ("Factors three and five slightly favor Plaintiffs, given their allegations that they have had to defer their academic and career plans, and medical research they plan to pursue."); *Saharia*, 2022 WL 3141958, at *6-7 (more detailed allegations of personal hardship sufficed to tilt third and fifth factors in plaintiff's favor).

Here, "[a]t most, these factors would weigh only slightly in support of finding an unreasonable delay.  They are not enough to overcome the other factors that weigh strongly in the Government's favor."  *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021).

### D.  *TRAC* Factor 4

Factor 4 – "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80 – strongly favors the Government here.  That is because "granting Plaintiff the relief he seeks would simply advance his application ahead of many others, including those of applicants who have been waiting as long, or longer, than Plaintiff.  And the effect of leapfrogging Plaintiff's application to the front of the line would

---

³ The Government has represented, and Plaintiff does not dispute, that Plaintiff applied for and received employment authorization.  *See* Br. at 14 (citing Heinrich Decl. ¶ 19).

do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication." *Baisheng Chen*, 2020 WL 6825681, at *6 (brackets, quotation marks, and citation omitted); *accord Sunny v. Biden*, Nos. 21-cv-04662 et al. (BMC), 2023 WL 5613433, at *3 (E.D.N.Y. Aug. 30, 2023) ("To grant priority would push others further back in line when the only difference between them and plaintiffs is that plaintiffs brought a federal lawsuit." (brackets and citation omitted)). Thus, as numerous courts have held in similar cases, the fourth *TRAC* factor favors the Government here. *See, e.g.*, *Arabzada*, 2024 WL 1175802, at *9; *Sunny*, 2023 WL 5613433, at *3; *Dawod v. Garland*, No. 23-cv-03211, 2023 WL 8605320, at *8 (C.D. Cal. Aug. 10, 2023); *Baisheng Chen*, 2020 WL 6825681, at *6; *Ying Yu Liu*, 2020 WL 2836426, at *9.

### E. *TRAC* Factor 6

"The sixth *TRAC* factor requires the Court to assess any allegations of bad faith or unfairness on the part of the agency. Where a plaintiff does not allege bad faith, the sixth factor reminds the Court not to impute impropriety to agency delay." *Arabzada*, 2024 WL 1175802, at *9 (citations omitted). Here, Plaintiff does not allege bad faith, unfairness, or other impropriety, so the sixth *TRAC* factor is neutral. *See, e.g.*, *Cohen v. Jaddou*, No. 21-cv-05025 (PAC), 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023).

### F. Final Analysis

Considering the *TRAC* factors holistically, the Court concludes that Plaintiff has failed to state a claim for unreasonable delay, especially given that the most important factors (first and fourth) favor the Government. The Court thus grants the Government's motion to dismiss Plaintiff's APA claim under Rule 12(b)(6).

**III.     Due Process**

"[T]he Fifth Amendment entitles noncitizens to due process of law," regardless of "whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process." *Pierre v. Holder*, 588 F.3d 767, 777 (2d Cir. 2009) (citation omitted).

Plaintiff has not alleged any facts suggesting that he has been deprived of constitutional due process. *See generally* Compl. Although the Court liberally construes Plaintiff's *pro se* submissions, "the Court's duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it," *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 48 (S.D.N.Y. 2019) (quotation marks and citation omitted), and "district courts 'cannot invent factual allegations' that the plaintiff has not pleaded," *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 94 (S.D.N.Y. 2023) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see, e.g.*, *Ngai*, 2024 WL 1346530, at *2-3 (dismissing asylum applicant's due-process claim where the "complaint lack[ed] factual amplification beyond [the plaintiff's] conclusory statement that the delay in her application has violated her due process rights"). Thus, the Court dismisses Plaintiff's claim alleging a violation of due process.

## CONCLUSION

For the reasons set forth above, the Government's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 15 and CLOSE the case.

Dated: May 17, 2024
       New York, New York

                                            SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge